ARTNELL COMPANY, Plaintiff-Appellant, *v.* NATIONAL BROADCASTING COMPANY, INC., Defendant-Appellee.

(No. 55591; )

First District—April 5, 1972.

Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago, (Thomas R. Mulroy, Ralph E. Davis, John L. Conlon, and Glen H. Kanwit, of counsel,) for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Don H. Reuben and Michael W. Coffield, of counsel,) for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

On August 3, 1966, Artnell Company and National Broadcasting Company, Inc., entered into a radio broadcasting contract by the terms of which NBC was to broadcast over WMAQ AM and FM, NBC's Chicago

radio stations, all of the White Sox games in 1967 and 1968 and was to pay Artnell $350,000 in 1967 and $375,000 in 1968. This agreement could be extended to cover 1969 and 1970 by written notice from NBC to Artnell. If said agreement were extended to cover 1969 and 1970, NBC agreed to pay Artnell $400,000 for each of said years.

On October 14, 1966, Artnell finalized an agreement for the telecast of the White Sox games with WFLD-TV, a television station in Chicago. After a conference between Arthur C. Allyn, Jr., President of Artnell and Mark Olds, station manager of WMAQ AM and FM, Allyn agreed to guarantee WMAQ its expected profit from radio broadcasts thus protecting it against the adverse effect of the television contract. Artnell and NBC executed the October 14, 1966 agreement amending the August 3, 1966, contract. It guaranteed NBC a net operating profit from radio coverage of $200,000 for 1967 and $250,000 for each subsequent year. This agreement provided that to the extent NBC's net operating profit from broadcasting the games fell short of the guaranteed amount, WMAQ had the right to offset against the rights payment it was obligated to pay Artnell under the initial August 3, 1966, broadcast contract. Allyn and Artnell's attorney reviewed the provisions of the October 14, 1966 agreement before Allyn signed it.

On March 8, 1968, the agreement of October 14, 1966, was amended further to provide that Artnell guaranteed a net operating profit to NBC of $200,000 each for 1967 and 1968 and $250,000 for each subsequent year. The March 8, 1968, document was a letter from NBC signed by Harry D. Jacobs, Jr., manager of WMAQ, addressed to Allyn, President of Artnell Company, and agreed to by Artnell Company by A. C. Allyn, Jr., President.

Each of the parties performed its obligation under the August 3, 1966, agreement and the amendments of October 14, 1966, and of March 8, 1968 until August 1968.

On July 29, 1968, Harry D. Jacobs, Jr., station manager for WMAQ AM/FM notified Allyn that it would be necessary to preempt some White Sox broadcasts on WMAQ AM to furnish coverage of the sessions of the Republican and Democratic presidential political conventions. The games in question would be broadcast over WMAQ FM and the White Sox baseball network which was a network of radio stations in the Midwest which receive and re-broadcast the radio broadcasts of White Sox games. All advertisers for the preempted broadcasts were given substitute advertising time by WMAQ so that the revenue to Artnell was unaffected. No advertising revenue was lost to WMAQ or NBC. Allyn testified that there was no loss of income due to the preemptions.

Artnell informed NBC on August 2, 1968, that preempting of any White Sox broadcasts would constitute a violation of the contract and would hold NBC liable for damages. On August 5, 6, 8, 26, 27, 28 and 29, 1968, WMAQ broadcast the proceedings of the Democratic and Republican national conventions and preempted the White Sox baseball games played on said dates. Artnell's complaint was filed September 23, 1968.

It appears that the plaintiff found no fault with the contract of August 3, 1966, and the amendments of October 14, 1966, and March 8, 1968, until after NBC's preemption of the baseball games.

Plaintiff filed a motion for summary judgment as to the liability of NBC under Counts 1, 2 and 4 of Artnell's complaint, asking for:

1. "A declaratory judgment that certain amendments to the radio broadcasting contract between Artnell and NBC were invalid and unenforceable for lack of consideration;

2. A decree ordering NBC's specific performance of the original terms of the broadcasting contract; and

3. A decree that NBC's preemption of seven of the White Sox games was a breach of contract."

NBC filed a cross-motion for summary judgment as to the same counts in which it agreed that there was no genuine issue as to any material fact relevant to NBC's liability under those counts.

Plaintiff appeals from an order denying plaintiff's motion for summary judgment under counts 1, 2 and 4 and entering summary judgment on the cross-motion filed by NBC.

■■ The plaintiff's first contention is that there was no consideration for the contract amendment of October 14, 1966, when Artnell and NBC entered into the radio broadcasting contract on August 3, 1966, Artnell's television contract with WGN-TV provided for the telecasting of 65 of the 162 White sox games. Artnell's later television contract with WFLD provided for the telecast of 129 games with an option to telecast all the games. The telecasting of all scheduled games was obviously a significant change in circumstances. Shortly after entering into the extended telecast contract with WFLD, Arthur Allyn informed NBC of it and offered to guarantee NBC's net profits on the radio broadcasts. Allyn's offer avoided a dispute, a possible abandonment of the radio contract and a suit by NBC for damages. These elements constitute the consideration for the October 14, 1966 amendment.

■■ Consideration is defined in *Lipkin v. Koren*, 392 Ill. 400, at page 406 as follows:

"It is a fundamental rule of law that a valuable consideration consists of some right interest, profit or benefit accruing to one party, or

some forebearance, detriment, loss or responsibility given, suffered or undertaken by the other."

■■ The plaintiff's *second contention is that it was not estopped from asserting the invalidity of the October 14, 1966, amendment.* Both parties discharged their contractual obligations under the October 14, 1966 amendment for nearly two years. Artnell received and accepted NBC's broadcast fee checks in accordance with the October 14, 1966 amendment. NBC relied on the October 14, 1966 amendment in that it was induced to continue to broadcast the White Sox Games for 1967 and 1968.

" 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy.' " *Laughlin v. Irwin,* 262 Ill.App. 40, 54.

On March 8, 1968, Artnell reaffirmed the October 14, 1966, agreement by reducing the guarantee from 1968 by $50,000. Artnell is estopped by its conduct from seeking specific performance of the original terms of the radio broadcasting contract.

The plaintiff's last contention is that NBC's preempting the broadcast of 7 baseball games in order to cover the 1968 national political conventions constituted a breach of the August 3, 1966, contract.

Section 309(a) of the Federal Communication Act provides:

"Subject to the provisions of this section, the Commission shall determine, in the case of each application filed with it to which section 308 of this title applies, whether the public interest, convenience, and necessity will be served by the granting of such application, and, if the Commission, upon examination of such application and upon consideration of such other matters as the Commission may officially notice, shall find that public interest, convenience, and necessity would be served by the granting thereof, it shall grant such application." 47 U.S.C., sec. 309(a).

NBC has a statutory duty to broadcast in the public interest. The 1968 national political conventions were broadcast by WMAQ because it determined that such broadcast would best serve the public interest. Station licensees must have the freedom to choose the programs which they believe best suited to their needs in order to operate in the public interest. (*National Broadcasting Co. v. United States,* 319 U.S. 190, 199.) The 1968 political conventions coverages were of great public interest

to this country requiring preemption by NBC of other conflicting programs.

■■ NBC's preemption of the broadcast of 7 White Sox games did not constitute breach of the August 3, 1966 contract. The October 14, 1966 amendment was enforceable either on the theory that it was supported by consideration or under the doctrine of equitable estoppel.

For the reasons above, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.