G. KEITH CASHMAN, Plaintiff-Appellant, *v.* JACK P. SHINN *et al.*, Defendants-Appellees.

Fourth District No. 4—82—0094

Opinion filed November 4, 1982.

Robert G. Heckenkamp, of Heckenkamp & Simhauser, P.C., of Springfield, for appellant.

Robert J. Sharfman, of Gomberg & Sharfman, Ltd., of Chicago, for appellees Jack P. Shinn and James J. Kemp, Jr.

Tyrone C. Fahner, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellee Warren W. Wilson.

Delmer R. Mitchell, of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, and Stephen C. Sandels and Mark L. Yeager, both of McDermott, Will & Emery, of Chicago, for other appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case concerns a suit brought in the circuit court of Adams County by plaintiff, G. Keith Cashman, a former president and director of defendant, Quincy Peoples Savings and Loan Association (Quincy-Peoples) against that defendant, its directors, and Jack P. Shinn, James G. Kemp, Jr., Warren W. Wilson, and Timothy E. Griffin. Plaintiff sought damages for alleged tortious conduct on the part of defendants causing plaintiff to resign his positions as president and director of Quincy-Peoples. Plaintiff appeals a judgment entered by the circuit court on June 11, 1981, granting summary judgment against him as to count I of his amended complaint and dismissing count II, in bar of action for failure to state a cause of action. We affirm.

The original complaint was filed December 20, 1978, and the amended complaint was filed July 31, 1980. Count I was against Quincy-Peoples, its directors, and Shinn and Kemp. It alleged those defendants had conspired to fraudulently obtain plaintiff's resignation, thus tortiously interfering with plaintiff's business relationship with Quincy-Peoples. Count II alleged the foregoing defendants and Wilson and Griffin had deprived plaintiff of due process entitling him to damages under the Civil Rights Act (42 U.S.C. sec. 1983 (1976)). Each count sought both compensatory and punitive damages.

On appeal, plaintiff maintains the trial court not only erred in entering the judgments for defendants but also erred in denying his motion to reconsider. That motion asserted he had obtained new matter of significance as a result of discovery in a related Federal case which revealed documents previously unavailable to him. He contended the summary judgment should have been set aside so he could present this matter to the court. Defendants make several arguments in support of the trial court's rulings. We deem some of their contentions sufficient to support the decision below and need not discuss others.

We consider first the ruling granting summary judgment on count I. At the time of the ruling much of the background information concerning the dispute was shown to be uncontradicted. Plaintiff was first hired by Quincy-Peoples in 1957, made vice-president in 1959 and president in 1969. For about 18 months prior to the summer of 1978, an employee of Quincy-Peoples, under plaintiff's supervision, made certain investments on behalf of the organization and borrowed funds for the investments. Claim was made that these borrowings exceeded that permissible under State and Federal requirements. On May 12, 1978, a meeting called by defendant Griffin, Commissioner of the Illi-

nois Savings and Loan Commission, and presided over by defendant Wilson, a deputy commissioner, was held in Springfield. In addition to Wilson, Cashman, the defendant-directors and defendant Shinn, a supervisory agent for the Federal Home Loan Bank, were also present. The situation concerning the borrowings and plaintiff's possible responsibility were discussed. After the meeting, the defendant-directors met in the hallway and agreed that plaintiff's employment should be terminated. Only the directors were present.

The defendant-directors met again in late May or early June to discuss plaintiff's termination and his replacement. At some time they decided to offer the post to defendant Shinn. On July 20, 1978, those directors met with Wilson and Shinn to discuss the possibility of Shinn taking the position. During the course of these discussions, defendant Kemp, a Chicago attorney, had been retained by Quincy-Peoples to advise them concerning the problems which had developed. On July 27, 1978, Shinn accepted the offer to become president of Quincy-Peoples and submitted his resignation to the Federal Home Loan Bank.

On July 31, 1978, a meeting of the Quincy-Peoples' board of directors took place in the presence of a court reporter who transcribed the discussion. Shinn was not in attendance. Shortly after the meeting began, defendant Keller informed plaintiff that its purpose was to seek plaintiff's resignation. Plaintiff was given a document containing a proposed termination agreement which had been drafted, and defendant Kemp explained its provisions. Keller informed plaintiff that if he chose not to execute the termination agreement and not to resign, his employment would be terminated by action of Quincy-Peoples' board of directors.

The parties do not dispute that after the proposed termination agreement was tendered to plaintiff, the meeting was recessed. Plaintiff then telephoned Wilson and asked him if he had requested plaintiff's resignation. Wilson said he had not. The tendered document was then executed by the parties. It provided plaintiff would be given the position of vice-chairman of Quincy-Peoples until December 31, 1978, and would receive his existing salary until that date. Thereafter plaintiff purported to repudiate the agreement and further matters of significance occurred which we discuss later.

The plaintiff correctly notes that the purpose of summary judgment procedure is not to make findings of fact but to determine whether factual issues exist. However, when the information properly before the court ruling on the motion shows that a ruling in favor of the movant would be required as a matter of law, summary judgment

may be entered accordingly.

The only evidence of tortious conduct on the part of any defendant which might have induced plaintiff to enter into the resignation agreement was evidence that some of the directors told plaintiff his resignation was being requested by certain Federal and State savings and loan regulatory officials when that was not true. No evidence indicated either defendants Kemp or Shinn were party to any such statements. Accordingly for that reason alone, judgment for Kemp and Shinn as to count I was justified.

We conclude that the summary judgment as to Quincy-Peoples and its directors was also justified upon the basis of conduct by plaintiff which estopped him from recovery against them. The documents before the trial court showed plaintiff and his counsel had various discussions about the signed resignation agreement with various of the defendant-directors. Eventually the directors were informed by plaintiff on August 31, 1978, that plaintiff was repudiating the agreement because of material misstatements made by him as well as material mistakes, duress, and coercion. Subsequently, a meeting was held between the parties' representatives on September 19, 1978. Then, on September 21, 1978, a letter was sent on behalf of Quincy-Peoples. The letter recited that representatives of the parties met as we have described, and "[a]s a result of the 'spirit' of [that] meeting" the directors ordered the writer to release monies previously held in abeyance. The letter then stated, "Accordingly, pursuant to the terms of an agreement entered into by and between you and [Quincy-Peoples] dated July 31, 1978, the following payroll checks are enclosed."

The above letter listed checks for the pay periods ending August 31, 1978, and September 15, 1978, in the sums of $1,728.94 and $1,690.61, respectively. The letter also listed a check in the sum of $933.24 "for final director's fees for the months of June and July, 1978." The evidence showed the letter contained the foregoing checks and that they were eventually accepted by plaintiff and cashed. Additionally, plaintiff received and cashed similar checks covering periods up to the first half of December 1978. Before cashing the checks, plaintiff placed a notation on his endorsement stating "partial president's employment salary," but he never otherwise notified Quincy-Peoples he was accepting the checks in a presumed capacity as president rather than under the termination agreement. Plaintiff thus accepted all of the salary payments he would have been entitled to under the resignation agreement except that for the last half of December 1978.

■ While the evidence is in dispute as to what took place be-

tween the parties on September 19, 1978, the letter of September 21, 1978, sending the checks referred to that meeting only in reference to the "spirit" in which the letter was sent. The letter made perfectly clear that the checks were being sent pursuant to the July 31, 1978, resignation agreement the terms of which are not in dispute. Plaintiff's endorsement purporting to change the tenor of his acceptance of the checks from that in which they were sent to him could not do so. (*In re Estate of Cunningham* (1924), 311 Ill. 311, 142 N.E. 740; *Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567.) Since plaintiff accepted those benefits sent to him under the resignation agreement, he was estopped to deny its validity. (28 Am. Jur. 2d *Estoppel & Waiver* sec. 59 (1966); see also *Artnell Co. v. National Broadcasting Co.* (1972), 4 Ill. App. 3d 970, 282 N.E.2d 493.) The resignation agreement contained an agreement to hold harmless the directors of Quincy-Peoples. The estoppel inures to their benefit as well as to that of Quincy-Peoples.

The major thrust of plaintiff's claim of damage in count I was his resignation of the presidency. Even if his claim for relief was not negated for the reasons previously stated, he could not have recovered for loss of the presidency because the evidence before the court showed that he had no reasonable expectation of continued employment at the time he executed the resignation. That is a necessary element of tortious interference as alleged in count I. The other elements are (1) knowledge of the business relationship by the interferor, (2) intentional interference, and (3) resultant damage. *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 358, 356 N.E.2d 1293, 1301; *Lord v. Melton* (1980), 80 Ill. App. 3d 1057, 1060, 400 N.E.2d 547, 549.

Section 3—6(d) of the Illinois Savings and Loan Act states:

> "(d) The board of directors shall designate and determine the management structure of the association and elect or appoint all officers. Each of the officers elected or appointed by the board of directors *shall serve at the pleasure* of the board of directors or pursuant to a written employment contract between the officer and the association." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 32, par. 746(d).)

By the terms of the foregoing, plaintiff was an employee at will. He admits that Quincy-Peoples could have discharged him at any time. However, plaintiff maintains that neither the employer nor others may act improperly to obtain a resignation of an employee at will without committing a tortious interference with the employment relationship. We do not agree that plaintiff's theory is applicable to the

circumstances here.

Recent decisions have held that a cause of action may exist for tortious interference with a contract of employment at will.

In *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827, a complaint by a former president of a national bank alleged that two directors of the bank had tortiously caused his discharge by the bank. By virtue of section 24, paragraph fifth of the National Bank Act (12 U.S.C. sec. 24, par. 5 (1976)), the plaintiff served at the pleasure of the board of directors of the bank. The trial court entered judgment on the pleadings for the defendant, but the appellate court reversed. The opinion cited a very similar case of *Kozlowsky v. Westminister National Bank* (1970), 6 Cal. App. 3d 593, 86 Cal. Rptr. 52, and Prosser, Torts sec. 129, at 933 (4th ed. 1971), and Restatement (Second) of Torts sec. 766, comment *g* (1979), for the proposition that the action may lie even though the employment alleged to have been interfered with was at will. The court noted that Prosser referred to a presumption that the employment would continue. Section 766, comment *g*, of the Restatement (Second) of Torts (1979) also speaks of such a presumption.

In *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1006, 380 N.E.2d 963, 967, the court stated:

> "It is also true that where there is *malicious* interference with an employment contract, it is immaterial whether it is for a fixed period or a contract terminable at will if *both* parties would have been willing and desirous of continuing the employment under that contract for an indefinite period of time." (Emphasis added.)

We agree with the statement in *TAD* that both parties to the at-will contract must be willing and desirous of continuing it in order for the action to lie when the contract is at will. We do not consider any presumption of continuance of the relationship to be absolute. In *Kemper,* the suit was against only two of the directors. The suit was at the pleading stage, and there was no showing that the plaintiff would not have retained his position in the absence of the alleged misconduct of the two directors. Similarly in *Kozlowsky,* the alleged misconduct was that of less than a majority of the directors and no showing was made that a majority of the directors would have voted to fire the officer in the absence of the misconduct.

Here, plaintiff admits that under the evidence, the board of directors could have fired him. The only possible showing of misconduct concerned the method in which the resignation was obtained. The evidence was conclusive that all of the directors except plaintiff

himself had agreed to fire plaintiff if he did not resign. The necessary expectation for the continuation of plaintiff's position as president has been negated as a matter of law.

■ The directorship held by plaintiff was not at will but for a term that would have continued several months past his resignation. Plaintiff did not receive a salary for the position but was merely compensated for attendance at meetings. Under similar circumstances in *Rodriquez de Quinonez v. Perez* (1st Cir. 1979), 596 F.2d 486, the court held that a bank director had no property interest in his directorship. However, regardless of whether plaintiff had a recognized expectancy in the continuation of his directorship, the estoppel operated in favor of Quincy-Peoples and its directors. In addition, because no evidence existed as to wrongdoing by other defendants, the record showed that no material question of fact existed which, if decided in plaintiff's favor, would support his claim as to count I. The trial court properly entered summary judgment as to that count.

■ The trial court also properly dismissed count II for failure to state a cause of action. The count was premised upon the defendants, while acting under color of law, depriving plaintiff of property or liberty without due process of law. (42 U.S.C. 1983 (1976).) Except as we subsequently state, the same conduct was charged as in count I. As far as any claim for his loss of the presidency was concerned, plaintiff failed to state a cause of action because, as we have stated, his service was at the will of the board of directors of Quincy-Peoples. The United States Supreme Court has held that loss of a position of employment which is not held as a matter of right does not deprive a person of liberty or property. (*Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694; *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) In *Bishop v. Wood* (1976), 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074, the court discussed *Roth* and held this same conclusion applies to the discharge of an at-will employee where there is no public disclosure of the reasons for the discharge. (426 U.S. 341, 348, 48 L. Ed. 2d 684, 692, 96 S. Ct. 2074, 2079.) No allegation was made here as to disclosure of reasons for plaintiff's resignation. Under *Rodriquez,* plaintiff's loss of directorship would also not constitute a deprivation of liberty or property.

As with count I, we need not adopt the doctrine of *Rodriquez* in order to justify the dismissal of count II. In order to have a cause of action under 1983 the defendant must have been acting under color of law. Only defendants Shinn, Griffin and Wilson were alleged to be public officials. No allegation was made as to any action by defend-

ants Griffin or Wilson other than that they attended certain meetings and made statements concerning the competency of plaintiff. No allegation was made that any of the statements were false or believed by either to be inaccurate or untrue. As to defendant Shinn, similar allegations are made as well as allegations that Shinn, while a supervisory agent of the Federal Land Bank having supervision over Quincy-Peoples, obtained information about the job of president of that institution, met secretly with its directors and agreed to serve as plaintiff's replacement. Plaintiff also alleged that at the July 31, 1978, meeting of the board at which plaintiff signed the resignation agreement, Shinn "represented that the resignation of Plaintiff would save the Commissioner's Office and the Federal Home Loan Bank the embarrassment of coming in and replacing Plaintiff." No allegation was made that Shinn was then a Federal employee nor that he did not believe his statement to be true and correct.

Count II makes some contention that those acting under color of law had some obligation to hold a hearing before being a part of forcing plaintiff's resignation. Even if they are deemed to have acted to terminate plaintiff's private employment, there is no requirement that in doing so they would have had to grant such a hearing. In *Cafeteria & Restaurant Workers Union v. McElroy* (1961), 367 U.S. 886, 6 L. Ed. 2d 1230, 81 S. Ct. 1743, the court held that an individual in private employment had no due process right to a hearing before being fired even though the firing was requested by a Federal official on security grounds.

Count II failed to state a cause of action against defendants Shinn, Griffin, or Wilson as it did against the others. The court properly struck the count.

■ Among the documents which plaintiff learned of through discovery in the related case was an interoffice memo from defendant Wilson dated July 11, 1978. The memo indicated Wilson's concern for the situation at Quincy-Peoples, and that he was aware of the board's efforts to replace plaintiff. He indicated he agreed that the best interests of the Association involved a replacement of the management of the Association. Plaintiff also found a letter from the Federal Home Loan Bank asking that a completed application for a loan be filed with them. We do not see how this cast further light upon the matters which justified entry of the summary judgment. Moreover, these matters were available in the files of the other case prior to the entry of the summary judgment. The trial court could have concluded plaintiff should have obtained this information earlier. The trial court did not

abuse its discretion in refusing to reconsider its order for summary judgment.

We affirm the judgment entered below.

Affirmed.

MILLS and LEWIS, JJ., concur.