161 F.3d 443
 1998-2 Trade Cases P 72,341, RICO Bus.Disp.Guide 9609
 MCM PARTNERS, INCORPORATED, Plaintiff-Appellant,
v.
ANDREWS-BARTLETT & ASSOCIATES, INCORPORATED, doing business
as Andrews-Bartlett Exposition Services, Harold
(Butch) Bartlett, Bonnie Aaron, et al.,
Defendants-Appellees.
 No. 97-2610.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1998.
Decided Nov. 17, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 28, 1999.
 
 Kenneth A. Jenero, McBride, Baker & Coles, Anthony S. DiVincenzo (argued), Campbell & DiVincenzo, Terrence M. Jordan, Chicago, IL, for Plaintiff-Appellant.
 Jeffrey M. Carey, Chicago, IL, John J. Eklund (argued), Calfree, Halter & Griswold, Cleveland, OH, for Defendants-Appellees.
 Before BAUER, WOOD, JR., and FLAUM, Circuit Judges.
 HARLINGTON WOOD, JR., Circuit Judge.
 
 
 1
 MCM Partners, Incorporated ("MCM") filed this suit against Andrews-Bartlett & Associates, Incorporated, Harold (Butch) Bartlett, Bonnie Aaron, and GES Exposition Services, Inc.[1] (collectively "Andrews-Bartlett") alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). MCM contends that Andrews-Bartlett acted illegally by refusing to rent equipment from MCM. The district court granted summary judgment to Andrews-Bartlett. MCM appeals.
 
 I. BACKGROUND
 
 2
 This case centers around the rental of moving equipment, such as forklifts and scooters, to exhibition contractors at Chicago's McCormick Place. Andrews-Bartlett was a national exhibition contractor which often was employed to orchestrate trade shows at McCormick Place. MCM and O.G. Services ("O.G.") were in the business of leasing moving equipment to exhibition contractors. The exhibition contractors would then use the rental equipment to set up the shows. MCM did not own its own equipment; instead, it acted as a broker, providing contractors with equipment it rented from National Truck Lift.
 
 
 3
 Prior to April 1991, only two companies, O.G. and AIM Industrial Lift Truck, supplied forklifts and other moving equipment to exhibition contractors at McCormick Place. In April 1991, MCM began to compete with O.G. and AIM for the McCormick Place business. In the fall of 1991, O.G. purchased AIM, leaving MCM as O.G.'s sole competition at McCormick Place.
 
 
 4
 In January 1992, Andrews-Bartlett sent a letter to MCM agreeing to use MCM as its primary supplier of gas scooters at McCormick Place for 1992 and to have MCM supply half of its equipment needs for both the National Restaurant Association Show and the Food Marketing Institute Show and all of its equipment for the "NSGA East Building" and the Siggraph Show.[2] Andrews-Bartlett then issued two purchase orders to MCM for rental equipment for the Restaurant and Food Marketing shows.
 
 
 5
 In February 1992, Nick Boscarino, an employee of O.G., sent a letter to Andrews-Bartlett which mentioned O.G.'s past service to Andrews-Bartlett and expressed a desire that O.G. continue to be Andrews-Bartlett's "official" forklift provider. In March 1992, Francis Sheridan, the general manager of Andrews-Bartlett's Chicago office, informed Boscarino that Andrews-Bartlett had agreed to rent some equipment from MCM. MCM asserts that Boscarino then told Sheridan that Bill Hogan, a high-ranking local official in the International Brotherhood of Teamsters, was "not going to like" the fact that Andrews-Bartlett was doing business with MCM.
 
 
 6
 Sheridan met with Hogan and other Teamster representatives in early April 1992 to discuss equipment rental for McCormick Place. Sheridan told the men that Andrews-Bartlett was not satisfied with O.G. and would begin renting equipment from both O.G. and MCM. They also discussed the terms of Andrews-Bartlett's use of certain labor at McCormick Place.[3]
 
 
 7
 On April 17, 1992, during a visit to Chicago, Harold Bartlett, the president of Andrews-Bartlett, met with Boscarino. Boscarino informed Bartlett that, if Andrews-Bartlett used O.G.'s services exclusively, O.G. would give Andrews-Bartlett an end-of-the-year rebate equal to 10% of Andrews-Bartlett's total rentals for the year. After this meeting, Andrews-Bartlett sent a letter to MCM stating that the two purchase orders were being canceled due to an "advance agreement" with O.G.
 
 
 8
 On April 22, 1992, MCM filed a lawsuit against O.G., several of its employees, and several members of the local branch of the Teamsters (the "O.G. Defendants"), alleging that O.G. conspired with Andrews-Bartlett and another exhibition contractor, Freeman Decorating Company, to monopolize the rental equipment market at McCormick Place, thereby excluding MCM as a competitor in the market. Several days later, the parties entered into a settlement agreement. In conjunction with this settlement, on May 5, 1992, MCM and Andrews-Bartlett, which was not a party to the first lawsuit, executed a Settlement Agreement and Release ("Release"). Under the Release, Andrews-Bartlett agreed to honor the two original purchase orders issued to MCM. In exchange, MCM agreed to release Andrews-Bartlett from any and all claims arising before April 25, 1992. Subsequently, both parties performed under the two purchase orders. However, Andrews-Bartlett did not rent any additional equipment from MCM from July 1992 until October 1994.
 
 
 9
 In August 1992, MCM filed a second lawsuit against the O.G. Defendants, Andrews-Bartlett, and Freeman Decorating. This complaint alleged violations of RICO and the antitrust laws. In November 1992, MCM voluntarily dismissed the O.G. Defendants. Andrews-Bartlett and Freeman Decorating moved to dismiss MCM's complaint. The district court granted these motions, and MCM appealed to this court. In MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967 (7th Cir.1995), we vacated the district court's dismissal of MCM's Sherman Act Antitrust and RICO claims and remanded the matter for further proceedings. After discovery, Andrews-Bartlett and Freeman Decorating filed separate motions for summary judgment. Andrews-Bartlett argued that MCM's claims were barred by the Release and, alternatively, that MCM lacked evidence to support its claims. The district court granted Andrews-Bartlett's motion, holding that MCM's claims based on pre-Release conduct were barred by the Release and that MCM failed to provide any evidence of post-Release violations. MCM filed a timely appeal.[4]
 
 II. ANALYSIS
 
 10
 We review the district court's grant of summary judgment de novo. Porter v. Whitehall Lab., Inc., 9 F.3d 607, 612 (7th Cir.1993). We will affirm if the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 Paragraph four of the Release states:
 
 11
 Andrews-Bartlett, as consideration for this Settlement Agreement, agrees to utilize M.C.M. as supplier of forklifts and scooters for the Supermarket Industry (FMI) '92 Show and the National Restaurant Association Show and agrees to pay M.C.M. all in accordance with the terms of the Purchase Orders attached hereto as Exhibits 1 and 2.
 
 
 12
 In exchange, MCM agreed to release Andrews-Bartlett from all claims:
 
 
 13
 [A]rising out of any matter, cause or thing from the beginning of the world to April 25, 1992 including, but not limited to, any and all claims, causes of action, liability or damages arising out of the acts, transactions, contracts, occurrences or events alleged in the pleadings filed in the Litigation and further including, but not limited to, claims and/or allegations allegedly arising from Exhibits 1 and 2 and the January 17, 1992 Letter attached hereto as Exhibit 3.
 
 
 14
 MCM asserts that the Release is unenforceable and, therefore, it cannot bar the claims against Andrews-Bartlett in the present suit. MCM's argument is two-fold. First, MCM contends that a condition precedent to the formation of the Release was not fulfilled. Secondly, MCM asserts that the Release is void as against public policy. We address each argument in turn.
 
 
 15
 MCM argues that the Release is unenforceable because a condition precedent to its formation was not fulfilled. Under Illinois law, a condition precedent to the formation of a contract is one that must be met before a contract becomes effective. Hardin, Rodriguez & Boivin v. Paradigm Ins., 962 F.2d 628, 633 (7th Cir.1992) (citing Kilianek v. Kim, 192 Ill.App.3d 139, 139 Ill.Dec. 213, 548 N.E.2d 598, 601 (Ill.App.Ct.1989)). Both parties must agree to a condition precedent for it to be considered binding. Id. (citing Wasserman v. Autohaus on Edens, Inc., 202 Ill.App.3d 229, 147 Ill.Dec. 571, 559 N.E.2d 911, 916 (Ill.App.Ct.1990)). MCM bears the burden of clearly establishing that the parties intended to create a condition precedent at the time the contract was made. See Wasserman, 147 Ill.Dec. 571, 559 N.E.2d at 916. MCM asserts that, as a condition precedent to the formation of the Release, the parties agreed that MCM would be allowed to compete fairly for Andrews-Bartlett's business. This condition was not set out in the Release; however, MCM argues that extrinsic evidence establishes the parties' agreement on this condition. Specifically, MCM points to the transcript of a hearing before the district court on April 24, 1992 and the deposition testimony of MCM's president, Frank Mugnolo, as evidence of this condition precedent.
 
 
 16
 On April 24, 1992, the district court held a hearing on the settlement of the initial suit by MCM against O.G. MCM mischaracterizes a portion of the hearing transcript in an attempt to prove that fair competition was a condition precedent to the execution of the Release. Considered in context, it is clear that fair competition was not set forth as a part of the agreement at the settlement hearing. At the beginning of the hearing, the attorneys for O.G. and MCM outlined the terms of the settlement agreement. They stated that, as a part of the settlement, Andrews-Bartlett had agreed to allow MCM to fulfill the two purchase orders. An attorney representing Sheridan then stated that it was his understanding that MCM agreed not to file litigation based on the January letter contract. After the settlement terms were recited on the record, the district judge stated "if anybody here feels the agreement that has been recited is not the agreement, it's time now to speak or forever hold your peace. It's a marriage that is being performed," to which there was no response. At this point, there had been no mention of a fair competition agreement. Fair competition was mentioned only at the close of the hearing when the district judge said:
 
 
 17
 All right, and then the only question I have, and I'm reluctant to ask it because I don't want to derail something you've put together, but I'll ask it anyway: What happens after Purchase Orders 20 and 21, which are May and June, or whatever they are, for the rest of the year? Everybody is just free to compete provided they compete fairly with one another? That's the idea?
 
 
 18
 The attorneys for O.G. and MCM assured the judge that this was the case. Even considered in the light most favorable to MCM, the hearing transcript does not suggest that Andrews-Bartlett agreed to fair competition as a condition precedent to formation of the Release.
 
 
 19
 Similarly, the Mugnolo deposition does not raise a genuine issue of material fact. When asked whether there was any obligation set forth in the Release that Andrews-Bartlett had not performed, Mugnolo answered that Andrews-Bartlett did not fulfill the purchase orders because it did not pay the rental taxes or damages assessed by MCM. Additionally, Mugnolo testified "Butch [Bartlett] was supposed to meet with me so we could solicit business and be treated on the same playing level. And he was supposed to give me a fair shot. In fact, Mr. Carey [Mr. Sheridan's attorney] I believe testified to Judge Plunkett, 'Yes, sir, they'll be given a fair shot.' And Carey also said that Butch would meet with me."[5] Significantly, Mugnolo did not testify that the Release was not to become effective unless the parties agreed to fair competition. At most, Mugnolo's testimony establishes that fair competition was a condition precedent to performance of the contract. Extrinsic evidence may be admissible to establish the existence of a condition precedent to the formation of a contract. However, when the language of the contract is unambiguous, the parol evidence rule prevents the consideration of extrinsic evidence to show the existence of a condition precedent to performance. Althoff Indus., Inc. v. Elgin Med. Ctr., 95 Ill.App.3d 517, 51 Ill.Dec. 386, 420 N.E.2d 800, 803-04 (Ill.App.Ct.1981). The Release is unambiguous, a fair competition clause easily could have been included, and MCM does not explain why one was not. We cannot allow MCM to use extrinsic evidence to alter unilaterally the terms of agreement. On the facts in the record, MCM cannot establish that fair competition was a condition precedent to the formation of the Release. MCM's unfulfilled condition precedent argument fails.
 
 
 20
 Alternatively, MCM contends that the Release is void as against public policy because it serves to release Andrews-Bartlett from future violations of RICO and the antitrust laws. On its face, the Release does not attempt to release claims for future violations; it expressly discharges only the claims that MCM may have against Andrews-Bartlett "arising out of any matter, cause or thing from the beginning of the world to April 25, 1992." Nevertheless, MCM argues that the district court applied the Release to bar claims arising from future violations.
 
 
 21
 MCM asserts that, in April 1992, as a result of a series of threats and concessions by the Teamsters, Andrews-Bartlett and O.G. entered into an agreement to exclude MCM from doing business at McCormick Place. While MCM concedes that this agreement occurred before April 25, 1992, MCM argues that each act in furtherance of a conspiracy gives rise to a separate cause of action and, therefore, actionable violations based on Andrews-Bartlett's post-Release conduct exist. According to MCM, the district court incorrectly applied the Release to bar these claims. Specifically, MCM contends that Andrews-Bartlett's refusal to deal with MCM from July 1992 until October 1994, based on alleged continued adherence to the April 1992 agreement, gives rise to non-barred causes of action. However, this claim is clearly based on pre-April 25, 1992 conduct and, as such, is expressly barred by the Release. MCM then argues, in the alternative, that the April 1992 agreement was "at most a one year deal" and, thus, "the protection of the release would end when the term of that agreement ended." MCM contends that the "exclusion of MCM for a second year constituted a new agreement." However, MCM does not allege any facts which would establish a new agreement or even an affirmation of the 1992 agreement. In order to state a claim under § 1 of the Sherman Act, 15 U.S.C. § 1 (1997), MCM cannot rely on a mere refusal to deal. Instead, MCM must show "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." MCM Partners, 62 F.3d at 972 n. 7 (quoting Denny's Marina, Inc. v. Renfro Prods., Inc., 8 F.3d 1217, 1220 (7th Cir.1993)). MCM has presented no facts which could support a finding that O.G. and Andrews-Bartlett entered into a new, post-Release agreement. The district court did not apply the Release to bar future antitrust claims.
 
 
 22
 MCM contends that a violation of RICO, 18 U.S.C. § 1962(c) and (d), occurred each time that Andrews-Bartlett contracted with O.G. However, in order to state a viable cause of action under RICO, MCM must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The facts in the record do not support a finding of a post-Release violation of RICO. Since MCM's RICO claim is based on pre-Release conduct, the district court did not apply the Release to bar future RICO claims. The Release is valid and enforceable.
 
 
 23
 The district court properly granted Andrews-Bartlett's motion for summary judgment. MCM's claims based on pre-Release conduct are barred, and MCM fails to present any evidence of post-Release violations.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 In 1993, Andrews-Bartlett & Associates, Incorporated, merged with GES Exposition Services, Inc
 
 
 [2]
 Andrews-Bartlett disputes that the January letter constituted a binding agreement and asserts that the document was merely a letter of intent
 
 
 [3]
 MCM contends that a letter of confirmation sent after this meeting shows that Hogan agreed to grant Andrews-Bartlett certain labor concessions. Andrews-Bartlett disputes this interpretation
 
 
 [4]
 Freeman Decorating was dismissed from this action pursuant to a settlement reached after the filing of the current appeal. Therefore, our analysis is limited to MCM's claims against Andrews-Bartlett
 
 
 [5]
 This testimony is contradicted by the transcript of the settlement hearing