Michael J. SCHULTZ,
Plaintiff–Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant–Appellee.

No. 89–2291.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1990.

Decided May 7, 1990.

---

Jordan B. Rifis, John Czapski, Rifis, Kucia & Associates, Oak Park, Ill., for plaintiff-appellant.

Michael M. Lane, Ann P. Goodman, Michael C. Cook, McCullough, Campbell & Lane, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and POSNER and MANION, Circuit Judges.

BAUER, Chief Judge.

Appellant Michael Schultz claims to have gotten two rough rides: one on American Airlines ("American") flight 445, for which he brought this diversity personal injury suit, and one from Judge James B. Moran, who, when the jury failed to return a verdict, granted American's motion for directed verdict pursuant to Fed.R.Civ.P. 50(b) ("Rule 50(b)"). After hearing and viewing all of Schultz's evidence, Judge Moran concluded that it was "just too thin." Schultz here challenges that conclusion.[1] We affirm.

## I.

A detailed factual exegesis is not required here. Basically, Schultz claimed that the turbulence on American flight 445 on March 28, 1985, was so extreme that he was thrown repeatedly against his seat belt and the seat partition causing his spleen to bleed and eventually rupture, for which American is liable because its employees negligently failed to warn the passengers and/or negligently chose to fly through the turbulence. Schultz's case depended almost entirely upon his own testimony. He testified that the turbulence was moderate at take-off, but worsened to the point where he had to brace himself with his feet against the bulkhead in front of him. He told the jury that his seat belt probably

---

1. Schultz also raises a completely meritless argument regarding Rule 50(b). Rule 50(b) states, in pertinent part, that "if a verdict was not returned, within 10 days after the jury has been discharged, [a party who earlier moved for directed verdict] may move for judgment in accordance with the party's motion for directed verdict." Schultz argues, with a straight face, that the defendant failed to satisfy this rule because its post-jury-discharge motion, though properly framed, in substance requested judg-ment *"on"* its earlier motion for directed verdict, not *"in accordance with"* it. We will not dignify this argument with a response, but note it merely to indicate the lengths to which this particular (losing) plaintiff appears willing to stretch credulity.

Also, our disposition of the merits of this appeal makes unnecessary a ruling as to American's motion to strike the post-trial affidavit of juror Carmina Renner.

saved his life, it being the only thing that prevented him from being thrown against the ceiling and across the plane.

It appears that Schultz did not even have the pleasure of company in his nightmarish experience on flight 445. Only his supervisor, who claims to have been sitting in the seat next to him, testified as to any unusual turbulence, and even he didn't specifically remember the severity of the shaking. Schultz's supervisor testified by deposition that he "thought" the shaking must have been "quite violent" because the flight attendants did not serve beverages during the flight. Every other witness, including the passenger who according to flight records actually occupied the seat next to Schultz, testified that the flight was essentially uneventful. Although most of them remembered some "bumpiness" at some point in the flight, none testified to the kind of turbulence that Schultz claims to have suffered through. Indeed, one witness, for whom this was a first-time experience with jet flight, stated, "I enjoyed the flight very much."

At the appropriate points in the proceedings, American moved for directed verdict. Judge Moran denied the motions and gave the case to the jury. After deliberating for one and one-half days, the jury reported that it was deadlocked five to one. American promptly moved for judgment in accordance with its earlier directed verdict motion(s). Pursuant to the authority granted him by Rule 50(b) ("If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial"), Judge Moran granted American's motion. From that final decision Schultz brings this appeal.

## II.

■ Under Illinois law, a directed verdict or JNOV is appropriate when "all of the evidence, when viewed in its aspect most favorable to the opponent [to the JNOV motion], so overwhelmingly favors movant that no contrary verdict based on that evi-

dence could ever stand." *Pedrick v. Peoria & Eastern Railroad Co.,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967). *See also Cincinnati Insurance Co. v. City of Taylorville,* 818 F.2d 1345, 1348 (7th Cir. 1987) (holding that, in Illinois diversity actions, the district court and this court apply the *Pedrick* standard, and adding, "This formulation does not require a complete absence of evidence supporting the side against whom the verdict is directed; however, there must be a substantial factual dispute before a jury trial is required.").

■ Judge Moran cited and applied the *Pedrick* standard in his order directing a verdict for American, and considered it a close call:

> It is the lack of evidence of negligence which causes this court to grant [American's] motion, although with a recognition that this case is on the borderline between the directed verdict standard and the new trial standard.... In light of all the evidence, this court has no hesitation in concluding that a verdict for the plaintiff would have been against the manifest weight of the evidence, but that is the standard applicable to a motion for a new trial. Can a verdict be directed when a plaintiff's unequivocal testimony is contrary to virtually all the other evidence in the case and that evidence is substantial and credible? No Illinois case we know of specifically so holds, but we believe that *Pedrick* stands for the proposition that at some point the evidence is just too thin. And we believe that point was reached here.

■ Schultz's primary contention on appeal is simply that Judge Moran was wrong. Schultz contends that "there is more than sufficient evidence to find for the plaintiff and an overwhelming abundance of evidence to deny" American's motion. From our review of the evidence, we disagree. The mere testimony of one (vitally interested) witness does not a negligence case make. The testimony of the other passengers provided slim support, if any. The only additional, admissible[2] evi-

---

**2.** Ruling on a motion in limine by American,

Judge Moran barred Schultz from presenting

dence that Schultz was able to muster were a weather report and the flight's maintenance log, the latter containing the following entry: "In flight during turbulence, yellow aft air stair light illuminated." Judge Moran could find no Illinois case in which a verdict based upon similarly thin evidence was upheld, nor can we. The *Pedrick* standard, while it does require the court to view all the evidence in the light most favorable to the opponent (here Schultz), does not require the court to take leave of its common sense in viewing that evidence, none of which sufficiently supports Schultz's claim.

■ A secondary contention by Schultz is that Judge Moran employed an erroneous standard of duty. Schultz contends that American should have been (but was not) held to the higher duty of care owed by a common carrier to its passengers. Judge Moran's Judgment Order reveals, however, that he did in fact employ this higher standard of duty: "Clear it is ... that American had a duty, indeed an enhanced duty as a common carrier, to use care to provide a safe flight." Contrary to Schultz's suggestion, Judge Moran did not thereafter depart from this standard by requiring that the evidence support that something more than moderate turbulence occurred on flight 445, nor by including the term "severe turbulence" in the instructions and special interrogatory given to the jury.

### III.

As Judge Posner noted at oral argument, Schultz's claim is precluded by the very laws of nature; the kind of violent turbulence claimed by Schultz cannot surgically strike only one seat on an airplane. Judge Moran was exercising eminently sound judgment when he concluded that Illinois tort law does not require, or even allow, such a claim to continue. His entry of

evidence that on the night in question United Airlines had cancelled all of its flights from Cleveland to Chicago (the route of American flight 445). Without any citation to authority, Schultz argues that this ruling was "improper." To reverse an evidentiary ruling of the trial

judgment on behalf of the defendant is AFFIRMED.

court, we must be convinced that the ruling was a clear abuse of discretion, *F.T.C. v. Amy Travel Service, Inc.*, 875 F.2d 564, 572 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989), a burden which Schultz does not even attempt to carry.