**HARDIN, RODRIGUEZ & BOIVIN ANESTHESIOLOGISTS, LTD., Plaintiff–Appellee,**

v.

**PARADIGM INSURANCE COMPANY, Defendant–Appellant.**

No. 90–2863.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1991.

Decided May 1, 1992.

Timothy S. Richards (argued) and Carl W. Lee, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., for plaintiff-appellee.

Russell Scott (argued), Dunham, Boman & Leskera, Belleville, Ill., for defendant-appellant.

Before BAUER, Chief Judge,
CUMMINGS and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Hardin, Rodriguez & Boivin Anesthesiologists (HRB) sued the Paradigm Insurance Company (Paradigm), alleging breach of contract, common-law fraud, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, ¶¶ 261–272. A jury found in favor of HRB, awarding it $40,174.72 in compensatory damages and $160,950.00 in punitive damages. The district court denied motions for a new trial and for judgment notwithstanding the verdict. Paradigm appeals, asserting that it substantially performed the contract, that the punitive damages were improper and excessive, and that its post-trial motions should not have been denied. We affirm.

## I. BACKGROUND

The plaintiff, HRB, is a professional corporation that provides anesthesiological services to hospitals in southern Illinois. In early 1987 HRB's malpractice insurer, the St. Paul Companies, announced a significant increase in insurance premiums, causing HRB to decide to look for a different, more affordable insurer. HRB's Dr. Hardin contacted Timothy Trout, an insurance broker, and asked him to help HRB find a reliable, solvent insurance company with affordable rates for medical malpractice insurance coverage. Dr. Hardin was especially concerned with finding a financially sound insurance company because at that time the medical profession was in the midst of an "insurance crisis," and it was common for new insurance companies to spring into the market and quickly disappear. Trout suggested that HRB might try Paradigm, and in June of 1987 Dr. Hardin went to Louisville, Kentucky to meet with representatives of Paradigm.

At the meeting Dr. Hardin expressed his concern that his company's insurance provider be financially stable, and asked Paradigm's representatives to send him a copy of a certified financial statement reflecting the company's stability as soon as possible. He also asked them to send a copy of its insurance policy. Paradigm assured Dr. Hardin that it would provide each of these documents. Dr. Hardin made it clear that he needed to see and review both the financial statement and the policy before HRB would commit to buy insurance from Paradigm; until then there would be no deal. Dr. Hardin also asked questions at the meeting, attempting to gain an impression of Paradigm's financial stability as well as the company's experience in providing medical malpractice insurance. Paradigm

told Dr. Hardin that it had extensive experience in insuring physicians for medical malpractice, though actually it had been in business for only a month. Paradigm's representatives also said they would send a certified financial statement and a policy to HRB immediately, even though they knew that they had neither document and, in fact, that neither of the documents existed in their office at that time. In addition, Paradigm advised Trout that it was licensed to sell insurance in Illinois, and therefore Trout did not have to worry about the "surplus lines" requirements that Illinois law applies to unlicensed insurance companies. As the evidence demonstrated, Paradigm was not licensed in Illinois either at that time or at any time during its proposed coverage of HRB.[1]

Paradigm failed to forward either a financial statement or a policy, despite several requests from Dr. Hardin, and later from Trout and his secretary. Instead, Paradigm authorized Trout to issue insurance "binders"[2] to HRB, which he did on July 7, 1987, and again on August 21, 1987. These binders purported to provide insurance coverage for one year beginning July 1, 1987. This alleged coverage was *subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.* At the time the binders were issued, however, Paradigm had no such policy in existence. A few days after receiving the first binder, and still believing that copies of the policy and a financial statement were forthcoming, HRB sent Paradigm its first quarterly premium (for July 1, 1987 to October 1, 1987) of $40,172.75 in July of 1987. In August HRB

still had not received the financial statement or the policy requested, and so Dr. Hardin called Trout to tell him that the deal was off, and that HRB would commence to search for alternative coverage. When the second premium came due in October Paradigm still had not forwarded the requested instruments (financial statement and policy), and HRB refused to pay. Nine months later, on April 26, 1988 Paradigm canceled HRB's "policy" due to nonpayment and billed HRB for the second quarter premium. Thereafter HRB filed suit, alleging that Paradigm had breached the oral contract by not delivering the requested documents, and committed common-law fraud and violated the Illinois Consumer Fraud and Deceptive Business Practices Act by making false statements to induce HRB into buying their insurance. Paradigm filed a counterclaim alleging that it was entitled to HRB's second quarter premium because it had provided coverage during that period.

## II. ISSUES

Paradigm alleges: (1) that the district court erred by not informing the jury that the binders issued by Paradigm provided insurance coverage for HRB, and alternatively that HRB either waived the conditions precedent or ratified the binders as replacing the original contract; (2) that the trial court erred in allowing the jury to find a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act without first finding that Paradigm's actions injured consumers in general; (3) that it was error to award punitive damages absent an award of compensatory damages

---

1. The Illinois Insurance Code requires companies doing business in Illinois to obtain a certificate of authority to do so. Ill.Rev.Stat. ch. 73, ¶ 735(5). Uncertified companies may still do business in Illinois, however, if they route their business through a licensed "surplus lines" broker. *Adams v. Illinois Insurance Guaranty Fund,* 85 Ill.App.3d 867, 41 Ill.Dec. 140, 143, 407 N.E.2d 638, 641 (1980). Trout was not a licensed surplus lines broker, and did not believe that he needed to become licensed because Paradigm told him it was authorized to do business in Illinois. Thus any insurance issued by Paradigm through Trout to HRB would in all likelihood be void under Illinois law.

2. A binder may be defined as:

 a document slip or memorandum given to the insured, which binds the insurance company to pay insurance should a loss occur pending action upon the application and actual issuance of a policy. The purpose of a binder is to provide temporary insurance pending an inquiry by the insurer as to the character of the risk and to take the place of a policy until the latter can be issued.

 Couch on Insurance 2d (Rev.Ed.), § 14:26 (1984) (footnotes omitted).

on the fraud counts, and in any event the punitive damages were excessive; and (4) that the district court erred in rejecting Paradigm's motions for a new trial or judgment notwithstanding the verdict. Because this is a diversity jurisdiction case, we apply the law of the forum state, Illinois. *Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts*, 917 F.2d 278, 286 (7th Cir.1990).

### III. DISCUSSION

The agreement at issue in this case arose during Dr. Hardin's meeting with Paradigm's representatives in Louisville, Kentucky. During that meeting Dr. Hardin agreed to have HRB buy medical malpractice insurance from Paradigm for $160,950.00 per year, *on the condition* that Paradigm first send him a certified financial statement and a copy of the insurance policy for review. On the advice of HRB's accountant Dr. Hardin insisted on receiving a certified financial statement in order that HRB might evaluate Paradigm's stability. Dr. Hardin also wanted a copy of the insurance policy in order that he might understand exactly what types of claims against HRB would or would not be covered. The first question we must address is whether Dr. Hardin, by demanding that HRB receive these documents before it would commit to Paradigm, created a condition precedent to its duty to perform the contract. Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform. *Kilianek v. Kim*, 192 Ill.App.3d 139, 139 Ill.Dec. 213, 548 N.E.2d 598 (1989). The failure to perform a condition precedent may be construed as a breach of contract. *Jones v. Seiwert*, 164 Ill.App.3d 954, 115 Ill.Dec. 869, 872, 518 N.E.2d 394, 397 (1987); Restatement (Second) of Contracts § 225(3). Both parties must agree to a condition precedent before it becomes binding. *See Wasserman v. Autohaus on Edens, Inc.*, 202 Ill.App.3d 229, 147 Ill.Dec. 571, 576, 559 N.E.2d 911, 916 (1990). Dr. Hardin testified that both parties agreed that HRB would not be bound until it received both

the requested financial statement and the insurance policy. This testimony was uncontradicted. Further, Paradigm's representatives stated at the initial meeting that they were willing to comply with the conditions. These facts indicate that the parties knowingly agreed to the conditions precedent, and understood them to be binding. Paradigm, however, failed to deliver either the financial statement or the insurance policy until more than a year after the policy was to have taken effect. As a result of Paradigm's failure to fulfill the conditions precedent, HRB had no obligation to pay its premiums. *Wasserman*, 147 Ill.Dec. at 576, 559 N.E.2d at 916; *Jones*, 115 Ill.Dec. at 872, 518 N.E.2d at 397. Even so, HRB paid its first quarter premium, assuming that Paradigm was making efforts to perform the conditions and would be able to do so. Paradigm claims that it is entitled to keep the premium payment because HRB waived the conditions precedent by accepting the binders in place of a written policy. Additionally, Paradigm asserts that HRB owes it money for the coverage provided during the second quarter of the policy year when HRB refused to pay. HRB contends that it is entitled to have its premium refunded.

### A. *Waiver of Conditions and Substantial Performance*

Conditions precedent may be waived when a party to a contract intentionally relinquishes a known right either expressly or by conduct indicating that strict compliance with the conditions is not required. *MBC, Inc. v. Space Center Minnesota, Inc.*, 177 Ill.App.3d 226, 126 Ill.Dec. 570, 574–75, 532 N.E.2d 255, 259–60 (1988); *Geldermann, Inc. v. Fenimore*, 663 F.Supp. 590, 592 (N.D.Ill.1987). Such conduct might include continuing to accept the breaching party's performance and the benefits thereof after learning of the breach. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198 (7th Cir.1985) (interpreting Illinois law). According to Paradigm HRB waived its right to insist on fulfillment of the conditions precedent when it paid its first quar-

ter premium after receiving the insurance binder and accepted the benefits of the "coverage" provided by the binder. While HRB did pay a premium after receiving the binder, this act does not constitute a waiver because HRB made its payment in anticipation of Paradigm's fulfilling the conditions precedent by forwarding the requested financial statement and written policy.[3] It continued to have Trout and his secretary call Paradigm, asking it to send the documents and stating that the deal was not final until the documents were received. Paradigm did not deliver the documents and, just one month after receiving the binder, HRB began looking for a new insurance company. Furthermore, HRB refused to pay its second quarter premium when it came due, establishing that it had never viewed the conditions as waived and had simply been waiting for Paradigm to perform. Finally, it cannot be argued that HRB accepted the benefits of the contract after learning of the breach, because Paradigm's binders provided no benefit. A binder is a temporary policy of insurance, used to provide temporary coverage while an insurance company decides whether to accept a customer's application. Couch on Insurance 2d (Rev.Ed.), § 14:26. Paradigm's binders, however, were meaningless. Although the binders stated that they were "subject to the terms, conditions, and limitations of the policy(ies) in current use by the Company," Paradigm did not have such a policy, much less a "policy in current use." Thus, the binders were of no value to HRB because they were based upon a non-existent policy. It is true that the second binder, issued on August 21, 1987, (over a month after the "coverage" was supposed to begin), mentioned the one million dollar indemnity ceiling and other general terms of the "coverage," but there was still no definition or explanation of the exact parameters and limitations on HRB's protection. With no policy backing the binders, HRB had no liability coverage and could not have accepted any benefits of the binders; short of bringing a declaratory judgment action, it had no way of knowing whether any of the alleged benefits existed or what they might be. By continually reminding Paradigm of the conditions, seeking new coverage, refusing to pay, and not accepting any benefits from the binders, HRB made it clear that the conditions precedent were not waived, thus Paradigm's claim fails.

■ Paradigm also makes a slightly different argument, claiming that HRB "ratified" the binder as replacing the promised policy. The argument is that Trout acted as HRB's agent when drawing up the binders, in which he failed to mention delivery of the requested documents as a condition precedent to the binders taking effect, and thus when HRB paid its premium after receiving the first binder it accepted the binder as representing the sole agreement between the parties. In general, a principal ratifies a contract made by an agent when, with knowledge of all the material facts, it either expresses its assent to the contract or fails to disaffirm the contract within a reasonable time and accepts benefits under it. *Old Security Life Insurance Co. v. Continental Illinois National Bank & Trust Co.*, 740 F.2d 1384, 1392 (7th Cir. 1984); *Peskin v. Deutsch*, 134 Ill.App.3d 48, 89 Ill.Dec. 28, 33, 479 N.E.2d 1034, 1039 (1985). Thus, the first question is whether Trout acted as HRB's agent. In the insurance field, a four-part test is used to determine whether a broker was, at any given time, the agent of the insurer or the insured. The court looks at: (1) who set him in motion first, (2) who could control his

---

**3.** HRB will not be penalized for making an early payment; it had every right to make an early payment without waiving the conditions precedent. For example, an insurance company can issue a binder to a customer before his application is approved, and if the application is rejected the company will be able to claim that the binder did not provide any interim coverage. *See Wallace v. Prudential Insurance Co. of America,* 12 Ill.App.3d 623, 299 N.E.2d 344 (1973). Thus, if Paradigm had stated as a prerequisite to coverage that HRB must meet certain criteria and HRB failed to do so, Paradigm could declare that the binders had never been effective. We see no reason why HRB should not have the same right; that is, the right to pay a premium without being bound until it is sure of the policy's terms and the insurer's financial stability.

actions, (3) who paid him, and (4) whose interest he was to protect. *Lazzara v. Howard A. Esser, Inc.,* 604 F.Supp. 1205, 1209 (N.D.Ill.1985), *rev'd in part on other grounds,* 802 F.2d 260 (7th Cir.1986). Analysis of these factors also depends on the specific act at issue, in this case Trout's preparation of the insurance binder. *Id.* HRB initially contacted Trout when it sought insurance and relied on him to protect its interest in linking up with a financially stable insurer. Similarly, HRB told Trout to keep Paradigm appraised of its insistence on receiving the promised documents. But it was Paradigm that directed Trout to prepare the binders, and it was Paradigm that paid Trout's commission. Arguably, Trout could have been the agent of either HRB or Paradigm. We need not resolve this issue, though, as even if we assumed, *arguendo,* that Trout was HRB's agent, there was no ratification of the binders by HRB. As discussed above, the fact that HRB paid its premium after receiving the binder is not indicative of its intent. While it is true that the binder drafted by Trout contained no mention of the conditions precedent, HRB never expressed its approval of the binder or accepted benefits under it. It persistently reminded Trout to continue asking Paradigm to deliver the documents, stopped paying premiums, and had Trout begin to look for a new insurer. Further, as discussed below, HRB could not have accepted any benefits from the binder because it referred to a non-existent policy and thus provided no benefits. Under *Old Security* and *Peskin,* HRB cannot be said to have ratified Trout's failure to mention the conditions precedent in the binder because it neither assented to it nor accepted any benefits under it.

Despite its failure to perform the conditions precedent or prove that they were excused, Paradigm claims that it substantially performed its duties under the agreement and the trial judge should have instructed the jury on this point. Specifically, Paradigm contends that the court made an explicit finding that the binder provided coverage for HRB, meaning that it gave HRB exactly what it wanted. Further, Paradigm argues that by not inform-

ing the jury of this finding the judge prejudiced its case by making it seem as if HRB had paid a $40,174.72 premium and received nothing in return. To prevail on a claim of erroneous jury instructions, a party must demonstrate that the error unduly affected the outcome by prejudicing the appellant's case. *Pendowski v. Patent Scaffolding Co.,* 89 Ill.App.3d 484, 44 Ill. Dec. 544, 548, 411 N.E.2d 910, 914 (1980). Instructions are proper when they convey the correct rules of law applicable to the evidence, but they need not be given when the proposed legal theory is not supported by the evidence. *Levenson v. Lake-to-Lake Dairy,* 76 Ill.App.3d 526, 32 Ill.Dec. 20, 28, 394 N.E.2d 1359, 1367 (1979).

The first question here is whether the trial court actually did, as Paradigm claims, make a finding that the binders provided coverage for HRB. Paradigm bases its claim on the judge's ruling that it could maintain its counterclaim because under Illinois law it is a "surplus lines" insurer. HRB had attempted to prevent Paradigm from bringing its counterclaim, relying on Ill.Rev.Stat. ch. 73, ¶ 733(4) which forbids insurance companies not licensed in Illinois from bringing claims in Illinois courts to enforce their rights on contracts executed in the state until they become certified to do business in Illinois. The trial court found that even though Paradigm did not have a Certificate of Authority to do business in Illinois, it could maintain its claim because it was authorized to issue "surplus line" insurance in the state. *See Cork v. Associated International Ins. Managers, Inc.,* 58 Ill.App.2d 331, 208 N.E.2d 4 (1965). From this Paradigm argues that the judge believed it was not only *able* to provide insurance in Illinois (through registered "surplus lines" agents) but also that it *did* provide coverage to HRB by way of the binders. The fact is that when the judge specifically considered the issue of whether the binders provided coverage he found that it was irrelevant to the case because any alleged effect of the binders was meaningless after determining that Paradigm had failed to fulfill the conditions precedent. There was no express finding of

coverage; in fact, there was no finding on the matter at all. Thus, Paradigm's claim that the trial court unfairly kept its legal determinations from the jury must be rejected.

Alternatively, Paradigm maintains that the binders provided coverage as a matter of law, and that this should have been presented to the jury in support of its claim of substantial performance. Citing *DeFoor v. Northbrook Excess & Surplus Insurance Co.*, 128 Ill.App.3d 929, 84 Ill. Dec. 172, 471 N.E.2d 938 (1984) and *Murphy v. Peterson*, 129 Ill.App.3d 952, 85 Ill.Dec. 112, 473 N.E.2d 480 (1984), Paradigm contends that its binders provided coverage for HRB of the very best kind, because in the absence of a supporting policy any court would require Paradigm to indemnify HRB for *all* claims made on the binders. Both *DeFoor* and *Murphy* note that ambiguous terms in an insurance contract will be construed in favor of the insured. This means that a court would ordinarily find that HRB was covered for all losses incurred while the binders were in effect, Paradigm argues, and by providing such broad coverage it substantially performed the contract. First of all, this case is different than *DeFoor* and *Murphy* because there was never any meeting of the minds as to what coverage Paradigm's insurance policy would provide. There is no question of how to construe ambiguous contract terms because *no* terms were ever specifically proposed by Paradigm or agreed to by HRB. In other words, this is not a case of contract construction because there were never any contract terms to construe. Second, Paradigm's argument misconstrues the meaning of substantial performance. The doctrine of substantial performance, usually applied to building contracts, provides that when a party performs the essential, material parts of a contract in good faith, the other party will be required to pay or perform even though there has not been strict compliance with the terms of the contract. *See Delta Construction, Inc. v. Dressler*, 64 Ill.App.3d 867, 21 Ill.Dec. 576, 381 N.E.2d 1023 (1978). In this way the doctrine prevents a forfeiture where the defect in the first party's

performance is "both trivial and innocent." *Jacob & Young's, Inc. v. Kent*, 230 N.Y. 239, 129 N.E. 889 (1921). Yet then-Judge Cardozo, the author of the landmark *Jacob & Young's* opinion on substantial performance, realized that the doctrine did not extend to cases like the one before us, where the plaintiff insisted upon strict compliance with its conditions and has never waived them: "This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here." *Id.* 129 N.E. at 891. The Restatement (Second) of Contracts is more direct in stating that the failure to perform conditions precedent is a bar to substantial performance.

> If, however, the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event. If, therefore, the agreement makes full performance a condition, substantial performance is not sufficient and if relief is to be had under the contract, it must be through the excuse of the non-occurrence of the condition to avoid forfeiture.

Restatement (Second) of Contracts, § 237, comment d; *see also Devalk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 336 (7th Cir.1987) ("Although the substantial performance rule in Michigan seems to derive in part from the maxim, 'The law abhors a forfeiture,' *we are convinced it applies only in the absence of conditions precedent.*") (emphasis added). HRB's conditions were explicit: it would buy insurance from Paradigm only if it first received the financial statement and policy. As we have already held, HRB did not waive those conditions. In such circumstances the doctrine of substantial performance is inapplicable, for the failure to satisfy the conditions precedent was an unexcused, material defect in Paradigm's performance. An important question in assessing claim of specific performance is whether the plaintiff has received the benefits expected under the contract. *Joray Mason Contractors, Inc. v. Four J's Con-*

*struction Corp., Inc.*, 61 Ill.App.3d 410, 18 Ill.Dec. 864, 378 N.E.2d 328 (1978). In this case HRB did not receive *any* of the benefits it anticipated and expected. HRB was interested in reliable coverage from a financially stable company, not meaningless binders referring to a phantom policy.

■ Furthermore, the fact that Paradigm never had a policy to back up its binders bars any argument that the binders provided coverage. The general rule is that binders which do not describe the terms of coverage, but merely refer to a policy to be delivered later, are to be treated as providing coverage "according to the terms of the policy in ordinary use by the company." *Jennings v. Illinois Automobile Club*, 319 Ill.App. 587, 49 N.E.2d 847, 850 (1943); *see also Pickett v. First American Savings & Loan Association*, 90 Ill. App.3d 245, 45 Ill.Dec. 531, 412 N.E.2d 1113 (1980). A logical corollary to this rule is that when there is *not* a policy in ordinary use insuring the risk purportedly covered by the binder, the binder itself is void and ineffective. This corollary applies to Paradigm, which never had a policy structured to meet HRB's needs, meaning that the binders were not worth the paper they were written on. To begin with, Paradigm failed to issue any policy at all until after the term of the binders had expired, and the one it issued contained significant errors, such as the lack of any reference to anesthesiology and the failure to include Doctor Boivin's name as an insured party. Also, HRB could not look to any "policy in ordinary use" because the only policy Paradigm ever issued to anesthesiologists was not helpful for HRB's purposes. Paradigm insured a group of anesthesiologists in Phoenix, Arizona during the term of the binders. But, as Paradigm's president admitted during his testimony, Paradigm did not send a copy of this anesthesiologist's policy to HRB because of significant differences in the type of coverage it provided and the type HRB needed. Specifically, it did not provide coverage for registered nurse anesthetists—coverage HRB had specifically requested. Thus, during the term when it claims to have provided coverage for HRB, Paradigm had no policy in

existence fitting HRB's specific needs and requirements, and thus nothing to support the binders. Simply put, Paradigm failed to provide *any* coverage for HRB.

Finally, the binders themselves, even if they had referred to an existing policy, were of doubtful legal validity. Paradigm had no Certificate of Authority to do business in Illinois, but it was allowed to sell policies in the state so long as it used a broker with a "surplus lines" license. *See* Ill.Rev.Stat. ch. 73, ¶¶ 733(1) and 1057. Trout did not have a surplus lines license (Paradigm led him to believe he did not need one), and thus the binders were in all likelihood void under Illinois law. Because Paradigm did not fulfill the conditions precedent or provide HRB with the benefits expected, its claim that the judge erred in not instructing the jury on the law of substantial performance fails.

**B. The Illinois Consumer Fraud and Deceptive Business Practices Act**

■ In response to a special interrogatory, the jury found that Paradigm had violated the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, ¶¶ 261–272, when it misrepresented facts to HRB concerning: (1) its experience in providing medical malpractice insurance; (2) its ability to produce a certified financial statement; (3) its ability to produce an acceptable insurance policy; and (4) its authority to do business in Illinois. The trial court did not instruct the jury that to find a violation of this statute it had to find that Paradigm's acts injured consumers generally. Paradigm contends, that the statute requires such public injury, and thus the jury instructions were erroneous and prejudicial. Since the date of the activities at issue in this case, the Act has been amended to provide that "Proof of a public injury, a pattern, or an effect on consumers generally shall not be required." Ill.Rev.Stat. ch. 121½, ¶ 270a(a) (amendment effective Jan. 1, 1990). The question before us is whether this amendment merely clarified the statute, meaning injury to consumers was not required at the time this case was tried, or whether it

actually changed the requirements for violating the Act. Prior to the amendment, Illinois courts split over whether a violation required proof of injury to consumers generally. *Compare Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1983) (requiring consumer injury), with *Warren v. LeMay*, 142 Ill.App.3d 550, 96 Ill.Dec. 418, 429, 491 N.E.2d 464, 475 (1986) (no general injury required); *see also First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1040 (7th Cir.1989) (collecting cases), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990). In *First Comics* this court predicted that if the Illinois Supreme Court faced the issue, it would require general injury to consumers. The amendment to the Act, however, was effective after *First Comics* was decided, and thus we are called upon to decide whether the legislature intended to overrule *First Comics* and similar cases, indicating that consumer injury was never a requirement under the Act, or if it meant to change the law prospectively.

 Though the court in *Cange v. Stotler and Co.*, 913 F.2d 1204, 1211 n. 4 (7th Cir.1990) wrote that "[t]he Illinois legislature prospectively resolved this conflict" between different interpretations of the statute, that statement was mere dicta, as the court found the appellant's claim on the issue had been waived. In this case, however, we must face the problem, and in doing so we look to the Illinois rule that "Where, as here, an amendment is enacted soon after controversies have arisen regarding the statute amended, it is logical and reasonable to regard the amendment as a legislative *interpretation* of the original statute." *People v. Badoud*, 122 Ill.2d 50, 118 Ill.Dec. 407, 410, 521 N.E.2d 884, 887 (1988) (emphasis added). In other words amendments to a statute, the meaning of which has been a subject of recent controversy, are more likely intended as clarifications of the law, rather than substantive changes. *First Comics* brought the controversy over the meaning of the Act to a head, as it attempted to predict how the Illinois Supreme Court would resolve the deep conflict among the state courts of appeal. Given the fact that the amendment closely followed *First Comics* and reached a contrary conclusion, we are of the opinion that the legislature merely intended to clarify the law, and that the Illinois Supreme Court would reach the same conclusion under *Badoud. Cf. Resolution Trust Corp. v. Krantz*, 757 F.Supp. 915, 923 (N.D.Ill.1991). We therefore hold that the jury instructions given by the trial court properly reflected the law, and Paradigm's claim is rejected.

## C. Punitive Damages

 Paradigm's next complaint is that punitive damages were improperly awarded because the compensatory damages related to the contract, and punitive damages may not be given for a mere breach of contract. While it is true that punitive damages are generally unavailable in contract cases in Illinois, *e.g. Carter v. Catamore Co., Inc.*, 571 F.Supp. 94 (N.D.Ill.1983), there is an exception when the defendant is also found to have committed an independent tort, separate from the breach of contract. *Buehler, Ltd. v. Home Life Insurance Co.*, 722 F.Supp. 1554 (N.D.Ill.1989); *Morrow v. L.A. Goldschmidt Assoc.*, 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986). To receive punitive damages for an independent tort in a contract case, a plaintiff must allege facts falling within a recognized tort theory. *Salvator v. Admiral Merchants Motor Freight*, 156 Ill.App.3d 930, 109 Ill.Dec. 337, 349, 509 N.E.2d 1349, 1361 (1987). HRB alleged that Paradigm made affirmative misrepresentations as to its insurance experience, its ability to procure the requested documents, and its authority to transact business in Illinois, and that HRB relied on these statements in promising to deal with Paradigm and ending its search for a stable insurer. These allegations correspond to the elements of common-law fraud, which requires: (1) a false statement of material fact, (2) known or believed to be false by the person making it, (3) made with the intent to induce another party to act, (4) followed by actual reliance on the truth of the statement, and (5) damage

resulting from this reliance. *Cotter v. Parrish,* 166 Ill.App.3d 836, 117 Ill.Dec. 821, 824, 520 N.E.2d 1172, 1175 (1988). Paradigm's statements were proven to be intentionally false, as it had full knowledge that the company was new in the business (one month), had no policy or financial statement, and was not licensed in Illinois.[4] HRB relied on these statements in agreeing to deal with Paradigm, believing that it could and would perform as promised, and suffered by never receiving the benefits it expected. Thus HRB adequately alleged an independent tort, and the jury found Paradigm liable, both for common-law fraud and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Accordingly, the "independent tort exception" applies, and the jury could properly award punitive damages.

■ Nevertheless, Paradigm claims that, because no compensatory damages were awarded for either the violation of the Illinois Act or common-law fraud, punitive damages were improper. This claim stems from the rule, usually applicable in tort cases, that punitive damages will not lie in the absence of compensatory damages. *See, e.g., Sorkin v. Blackman, Kallick & Co., Ltd.,* 184 Ill.App.3d 873, 133 Ill.Dec. 133, 540 N.E.2d 999 (1989). In *Sorkin* the court disallowed punitive damages because the plaintiff's tort claim could not be distinguished from the contract claim. Paradigm maintains that the same thing happened here when HRB used the failure to deliver the requested documents as both proof of a breach of contract and evidence of fraudulent statements. The purpose of the "independent tort" exception to the rule barring punitive damages in contract cases, however, is to separate mere wilful breaches of contract, which require no more compensation than an unwilling breach to make the plaintiff whole, and other wanton or malicious acts that cause a

distinct injury and merit the deterrent of punitive damages. *See Naiditch v. Shaf Home Builders, Inc.,* 160 Ill.App.3d 245, 111 Ill.Dec. 486, 512 N.E.2d 1027 (1987); *Buehler,* 722 F.Supp. at 1565. Paradigm's failure to deliver the documents supported HRB's contract claim, but it was the fact that Paradigm lied about even having them, and about its business experience, that supported the fraud claims and constituted a separate wrong and a basis for punitive damages. Still, Paradigm asserts that, because the jury did not give any separate compensatory damages for fraud, it must have found that the fraud caused no harm distinct from the breach of contract. The law, however, only requires the plaintiff to prove that an independent tort was wantonly, willfully, or maliciously *committed,* and HRB certainly did this. *Salvator,* 109 Ill.Dec. at 349, 509 N.E.2d at 1361. "[W]here a count contains allegations sufficient to support both a contract claim and an independent tort, both may stand and *punitive damages may be awarded if the plaintiff is able to sustain his burden under the tort theory." Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F.Supp. 926, 929 (N.D.Ill.1984) (emphasis added). HRB did all it had to do to merit an award of punitive damages; it proved to the jury that Paradigm wilfully and wantonly committed an independent tort. We believe this to be the case because: (1) the jury awarded punitive damages, which the instructions allowed it to do *only* if it found common-law fraud under count II of the complaint, and (2) the jury found in a special interrogatory that Paradigm violated the Illinois Consumer Fraud and Deceptive Business Practices Act. Therefore the award of punitive damages was proper.

■ Paradigm also alleges that the punitive damages were excessive, and contends that the court should have granted

---

**4.** Paradigm's claim that it was authorized to do business in Illinois because it could issue "surplus lines" insurance through registered agents misapprehends the law.

Surplus lines carriers are by definition not authorized to do business in this State. True, they may lawfully write surplus line policies,

but that is not the same thing as being authorized to transact business as that phrase is used throughout the Insurance Code. Surplus line insurers have no certificate of authority. *Adams v. Illinois Insurance Guaranty Fund,* 85 Ill.App.3d 867, 41 Ill.Dec. 140, 140–41, 407 N.E.2d 638, 638–39 (1980).

its post-trial motion to reduce them. Illinois courts look to three factors in analyzing this issue: (1) the nature and enormity of the wrong, (2) the financial status of the defendant, and (3) the potential liability of the defendant resulting from multiple claims. *Hazelwood v. Illinois Central Gulf Railroad*, 114 Ill.App.3d 703, 71 Ill. Dec. 320, 328, 450 N.E.2d 1199, 1207 (1983). The defendant bears the burden of proving damages are excessive. *West v. Western Casualty and Surety Co.*, 846 F.2d 387, 399 (7th Cir.1988). As to the third factor, Paradigm makes no allegation that it may be subject to potential liability from multiple claims. As to its financial status, it appears that Paradigm today is worth roughly $3.8 million. Punitive damages of $160,000 appear to be reasonable for a company of this size, and Paradigm makes no. claim to the contrary. Finally, the jury appears to have properly estimated the enormity of the wrong, granting HRB the value of one year's insurance premiums. This seems reasonable, especially since HRB was unable to locate a new insurer for almost a year, and once again Paradigm makes no specific claim to the contrary. We refuse to upset a jury's verdict without good cause. *See Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990). No such cause has been demonstrated, and we therefore find that the award was not excessive.

### D. *Post-trial Motions*

After trial, Paradigm moved for either a new trial or judgment notwithstanding the merits. The judge denied both motions, finding that Paradigm had not satisfied the relevant legal standards. Paradigm claims that this was error. On motions for a new trial the federal standard applies, even in diversity cases. *Wassell v. Adams*, 865 F.2d 849, 854 (7th Cir. 1989). Under this standard, "a new trial can be granted only when the jury's verdict is against the clear weight of the evidence." *Davlan v. Otis Elevator Co.*, 816 F.2d 287, 289 (7th Cir.1987). The district judge applied this standard and held that a new trial was not necessary in view of the fact that HRB had demonstrated that Paradigm had breached the contract by failing to perform the conditions precedent and committed fraud through its wilful misrepresentations. In light of this, the court found, the jury's verdict was not contrary to the clear weight of the evidence. We review a denial of a motion for new trial under a deferential abuse of discretion standard. *Fleming v. County of Kane*, 898 F.2d 553 (7th Cir.1990). We agree with the district court's reasoning that the evidence regarding Paradigm's failure to fulfill conditions precedent and making of misleading statements was strong and amply supported a verdict in HRB's favor, and so find no error in the denial of Paradigm's motion.

As to the motion for judgment notwithstanding the verdict under Fed. R.Civ.P. 54(b) we apply the Illinois rule that such a motion should be granted only if "all of the evidence, when viewed in its aspect most favorable to the opponent [of the motion] so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Schultz v. American Airlines, Inc.*, 901 F.2d 621, 623 (7th Cir.1990), quoting *Pedrick v. Peoria and Eastern Railroad Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967). The state standard applies because this is a diversity case. *Schultz*, 901 F.2d at 623. Review of the denial of such motions is *de novo*. *Fleming*, 898 F.2d at 559. The evidence revealed that the defendant never performed the conditions precedent; that these conditions were never waived; that HRB paid a premium for actual insurance coverage but received a binder without any coverage; that the policy, when finally issued, was not structured for the particular needs of HRB's group of anesthesiologists as requested; and that Paradigm made false material representations in inducing HRB to deal with it. Paradigm was unable to rebut this evidence by proving either that it substantially performed the contract or that it never lied to HRB. Without such proof the evidence presented not only overwhelmingly supports the verdict, but also excludes the possibility of other verdicts.

We affirm the district court's denial of Paradigm's motion.

## IV. CONCLUSION

Because Paradigm has not proven that it substantially performed the contract, or that HRB waived the conditions precedent or ratified the binders, or that the trial court gave erroneous or prejudicial jury instructions, or that punitive damages were improper or excessive, or that it deserved a new trial or judgment notwithstanding the verdict, the judgment of the district court is

AFFIRMED.