**Zaron Lee PETTY, Plaintiff,**

v.

**NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, Defendant.**

**No. 90 C 6984.**

United States District Court, N.D. Illinois, E.D.

May 12, 1992.

Reserve, however, does not claim any injury from these transactions.

Timothy O. O'Sullivan, St. Louis, Mo., Karolo Michael Karacie, Carroll & Sain, Ltd., Chicago, Ill., for plaintiff.

Bernard Roccanova, Raymond Hugo Groble, Ross & Hardies, Chicago, Ill., for defendant.

## ORDER

BOBRICK, United States Magistrate Judge.

This matter is before the court on plaintiff's motion for a new trial and the court's own initiative to consider a new trial. We find that the jury verdict as to damages (in the amount of $60,000) awarded plaintiff to be against the clear weight of the evidence resulting in substantial injustice, and as such a new trial will be granted on that issue. *Hardin v. Paradigm,* 962 F.2d 628, 640 (7th Cir.1992).

At the outset we recognize that this case does not involve a verdict, rendered by a jury, that could conceivably be considered as a compromise verdict wherein jurors may have resolved their differences on the issue of liability by finding a small amount of damages to be awarded to the plaintiff. In this case, liability went virtually uncontested. Causation, likewise, was uncontested by any creditable evidence, and in fact was established by significant evidence.

On the issue of liability, there was no strong contest offered by the defendant. This apparently was so since the plaintiff established a rather strong case of employer liability, albeit his need for only a slight showing of negligence under the Federal Employers' Liability Act, 45 U.S.C. § 51–60. *Harbin v. Burlington Northern RR Co.,* 921 F.2d 129 (7th Cir.1990).

The facts in this case were rather clear and straightforward. The defendant, without notice or warning, placed an obstruction, i.e., a pallet of rail car brake shoes, across the pathway where workers, including the plaintiff, regularly walked to their work station. On December 10, 1987, plaintiff's work shift required him to report for work during the very dark of night. The pathway that he would traverse, where the obstruction blocked safe transit, was unlit and in pitch dark, making the obstruction virtually invisible to the naked eye. No warning lights, barriers, or signs were posted. By reason of these described conditions, each of the first three employees reporting to work on the day of the accident, the plaintiff being the second, tripped or fell over the obstruction placed across

the pathway. Unfortunately for plaintiff, as he fell across the obstruction, he twisted his upper torso in such a way as to cause a severe injury to his lower back. This injury was later diagnosed as a herniated disc.

As to the factual issue of causation, the evidence showed that, as plaintiff fell, he twisted his back jamming his lunchbox into his groin. He felt pain the day of the accident and into the next day, but he attributed that pain to the general effects of the fall. The weekend following the day of the accident found plaintiff in considerably more pain, requiring him to seek medical attention. That weekend he contacted and obtained an appointment with Dr. Thomas Townsend, a chiropractor. The earliest available date Dr. Townsend could see the plaintiff was December 15, 1987 (five days after the accident). Dr. Townsend testified that plaintiff, on December 15, 1987, presented with clear signs of a lower back neurologic defect, i.e., possible herniated disc in the lower lumbar area. Dr. Townsend became quite concerned about plaintiff's condition once he made his diagnosis of a possible herniated disc. To insure that he did not exacerbate the plaintiff's condition, he purposely refrained from performing his usual therapy of spinal manipulation. He instead referred plaintiff to a neurosurgeon, a Dr. Atkinson, for confirmation of his diagnosis.

Dr. Atkinson, with the use of a Magnetic Resonance Imaging (MRI), diagnosed a bulging or herniated disc at lumbar vertebrae 4 and 5 with significant neurologic symptoms. Plaintiff's own neurosurgeon, Dr. John Stamelos, later confirmed the condition and performed a partial diskectomy and laminectomy on the plaintiff's spine. Dr. Stamelos' testimony, accompanied by the various x-rays (MRI), described the herniation of the disc in plaintiff's lumbar spine, concluding that the herniation was caused by the fall on December 10, 1987.

Little creditable evidence was introduced to counter the fact that the fall by the plaintiff, on December 10, 1987, resulted in his serious back injury. Defendant, in a vain attempt to meet the issue of causation, did bring forward its expert witness, a Dr.

Leonard Smith, who opined on the issue of causation. Dr. Smith concluded that plaintiff did not injure his back on December 10, 1987, but did so some six months or more later. Defendant put to Dr. Smith a hypothetical question specifically containing, as its predicate fact, the proposition that plaintiff did not seek medical attention for a period of approximately six months after his accident—proof of this was nowhere to be found in this case. Defendant's expert witness was not informed of the uncontroverted fact that within two or three days of the accident, plaintiff, due to his persistent and severe pain, sought an appointment with Dr. Townsend and was seen within five days of the accident. Thus, Dr. Smith's opinion (defendant's evidence on causation) that plaintiff's herniation was caused at least six months after the accident was clearly based on false information and facts not adduced at trial and, as a matter of law, was of no material value to the issue of causation. It appears the jury disregarded defendant's expert evidence since they found in favor of plaintiff on this issue. We do note that Dr. Fisher, the defendant occupational physician, while equivocal as to the presence of the herniation, gave credence to the fact that the plaintiff had suffered a significant injury on December 10, 1987, and was experiencing considerable pain and limitation of movement.

■ By reason of the very strong, uncontested, and compelling evidence relating to the negligence of the defendant, and the strong and conclusive factual showing that defendant's negligence caused plaintiff's injury, we find the jury's verdict in favor of the plaintiff on these issues well-founded and supported by sufficient evidence. Additionally, the strength of the evidence on these threshold issues was such that we can only conclude the later damage award can neither be perceived as one of sympathy or compassion, nor one which was inextricably interwoven into the issue of liability. As such, in the context of the Fed. R.Civ.P. 59 motion we need address only that part of the verdict dealing with damages. *Phav v. Trueblood, Inc.,* 915 F.2d 764, 767 (1st Cir.1990); *Mekdeci By and*

*Through Mekdeci v. Merrell Nat. Labs,* 711 F.2d 1510, 1513 (11th Cir.1983).

■ We find the jury's verdict as to damages, unlike their finding for the plaintiff on the issue of defendant's negligence, and whether that negligence contributed to plaintiff's injury, to be against the clear weight of the evidence and by reason of this it must be set aside in order to achieve substantial justice in this case. The jury award of $60,000 as damages bore no reasonable relationship to the loss suffered by the plaintiff.

The plaintiff is an individual who has less than a high school education. He is 37 years of age. He has, throughout most of his working life, been engaged in heavy arduous work. His ability to earn an income was dependant on his capacity to perform arduous labor of a skilled nature. The evidence established (without any opposition by defendant) that the plaintiff, due to his injury, would no longer be able to engage in arduous skilled labor, a high-paid vocation, and as such his earning capacity was significantly impaired. He could no longer work for the defendant as he no longer was capable of performing the heavy lifting associated with his required job duties as a working foreman of a bridge and structure building crew. The plaintiff was earning approximately $15.00 per hour with significant benefits and significant overtime. With his limited education and a history of arduous work, the evidence established that he would no longer be able to earn those same wages as he did prior to his injury; he instead would be relegated to entry level jobs paying not much more then the minimum wage. The evidence was uncontroverted that the injury caused plaintiff by defendant's negligence resulted in a permanent and serious disability. All credible medical testimony established that fact.

As to plaintiff's damages, he lost approximately $43,000 in actual earnings due to his inability to work during his convalescence from back surgery. He suffered a significant impairment to his future earning ability. The plaintiff correctly submitted uncontested evidence of the present value of future lost earnings. *Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 338–39, 340–41, 108 S.Ct. 1837, 1844, 1845, 100 L.Ed.2d 349 (1988). His economic expert witness, Dr. Leroy Grossman, applying appropriate actuary data to plaintiff's uncontested post-injury residual functional work capacity, opined that plaintiff would lose anywhere from $434,000 to $751,000 in future earnings, depending on how successful he was in getting a job that paid more then the minimum wage rate. Additionally, plaintiff now experiences significant back and leg pain, limitation of motion and is required to use pain medication and pain control devices. His pain, and his need for pain control medication, intrudes to a substantial degree in plaintiff's life style. He has a permanent medical disability.

Thus, we find plaintiff introduced evidence on four types of damages: (1) lost past earnings; (2) lost future earnings; (3) pain and suffering, and (4) disability. The undisputed evidence essentially established: (1) $43,000 in lost earnings; (2) approximately $600,000 in lost future earnings; (3) pain that prevents plaintiff from continuing in certain long-held personal and family hobbies and activities, as well as continuing in his former occupation, and (4) intractable pain that causes persistent discomfort and limitation in normal body movements.

The jury returned a damage award of $60,000, an amount that was only $17,000 more than plaintiff's actual out-of-pocket lost earnings. The jury's grudging award is found to be outside the realm of any reason or support, and contrary to the clear weight of the evidence, particularly in light of the fact that the jury had ruled in favor of plaintiff on defendant's liability. We view the jury's award of damages as manifestly and shockingly inadequate concluding that both the elements and evidence of damages had been disregarded by the jury; this necessitates a new trial on the issue of damages. *Phav v. Trueblood, Inc., supra; Mekdeci By and Through Mekdeci v. Merrell Nat. Labs, supra.*

The jury was instructed that if plaintiff was found to be entitled to a verdict, that verdict should include as an award, a rea-

852

sonable sum for "... any loss of future earning power ..." and that it became their duty "... to ascertain the present worth in dollars of such future damages ..." The lost future earnings was an established fact, and the fact-finder was required to fairly deal with these facts in awarding reasonable damages. *Sosa v. M/V LAGO IZABAL*, 736 F.2d 1028, 1033 (5th Cir.1984). Notwithstanding the uncontested evidence as to future lost earnings, and the court's instructions, the jury award of $60,000 amounted to no more than $17,000 over plaintiff's past lost earnings. From this we conclude: (1) the jury disregarded virtually all the economic evidence concerning plaintiff's future lost earning damages; and (2) the jury totally disregarded the court's instructions on how to compute reasonable damages.

Additionally, as it was with future lost earnings so we also find the same true with regard to pain and suffering. Substantial medical evidence established that plaintiff will never live a pain free life again. His current use of significant pain medication and use of pain control devices belie any thought that plaintiff can ever again live a normal life, with all its attendant personal, family and occupational components. Lastly, *a fortiori*, is not this plaintiff entitled to reasonable compensation for his disability caused by the negligence of the defendant? Viewing the jury's parsimonious award of $17,000 to compensate for both lost future earnings and pain and suffering, we honestly cannot perceive any rational basis for this verdict. Thus, as a matter of law, we find the need for a new trial on the question of damages, there being manifest error and mistake by the jury. *Hardin v. Paradigm, supra; Phav v. Trueblood, Inc., supra.*

In summary, we find the verdict by the jury as to damages to be against the manifest and clear weight of the evidence, showing a serious and erroneous disregard for the court's instructions, unfair in light of all the evidence, and so inadequate as to be a miscarriage of justice. Therefore, as the ends of justice require, the verdict should be set aside. Accordingly, it is hereby ORDERED that that part of the jury verdict relating to damages is hereby VACATED and plaintiff's motion for a trial on the limited issue of damages is hereby GRANTED.